

IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF TENNESSEE
(AT KNOXVILLE)

DENNIS ROGER BOLZE,
Reg. No. 14825-067
FCI Big Spring
1900 Simler Avenue
Big Spring, Texas 79720,

      Plaintiff,

Vs.

COMMODITY FUTURES TRADING
COMMISSION,
Three Lafayette Center
1155 21st Street, N.W.
Washington, DC  20581

      Defendant.

Civil Action No. 3:14-CV-24

## COMPLAINT

This civil Complaint is filed pursuant to 5 U.S.C. § 552 and its provisions due to the fact that the defendant has failed to comply with the statutory construction of the Freedom of Information Act (the "FOIA") by [NOT] allowing for the release of the redaction of documents under its control in reference to the 2006-07 investigation of Plaintiff Bolze and the organization that he controlled at the time.

These documents are sought to assist the Court, the investors of Centurion Asset Managment ("CAM"), their family members, friends, and associates who would later invest millions of dollars after the

-1-

2006-07 investigation, the News media, and other parties in observance (e.g., the Trustees of the BAnkruptcy and several financial institutions) all of whom lost millions in 2008 after the collapse of "CAM." These documents would allow those parties of interest to scrutinize the actions and activities of  - the governmental agency in charge of protecting them from abuse.

Plaintiff requests this Honorable Court to grant an order that requires the Commodity Futures Trading Commission (the "CFTC") to release [ANY] and [ALL] documents concerning its 2006-07 investigation of Plaintiff Bolze and "CAM" and/or Advanced Trading Services, Inc. ("ATS") through its resident agency (Neveda Corporation Headquarters) and/or its legal counsel (Lorence and Schrier) who represented both Bolze and "CAM" and/or "ATS" during this investigatioon and give a full and complete accounting within thirty-days (30 days) for the reasons and legal authority stated below:

## INTRODUCTION

Comes now, DENNIS ROGER BOLZE, (hereinafter "Plaintiff") who is appearing in a Pro'Se capacity seeking relief from the denial of the "CFTC" to provide documents pursuant to the Freedom of Information Act (the "FOIA") for scrutiny by the public - e.g., the Court, the "CAM" investors, along with their family members, friends, and associates who invested millions after the 2006-07 investigation, the News media, and other parties in observance concerning the "CFTC" investigation of Bolze and "CAM" and/or "ATS" clearing them of [ANY] wrong doing and the need to be register with the National Futures Assoc. (the "NFA").

## I: JUDICIAL REQUEST

Due to the Pro'Se nature of this filing, Plaintiff respect-

fully request that this Honorable Court provide a less stringent standard of review when examining Plaintiff's attempts at case citing, rules, procedures, and legal syntax. See; Haines Vs. Kerner, 406 U.S. 519, 520 (1972); Estelle Vs. Gamble, 429 U.S. 97, 106 (1976); and Erickson Vs. Pardus, 551 U.S. 89, 94 (2007).

For the purpose of the Honorable Court's consideration, Bolze would respectfully further elaborate upon the principles reflected by the Supreme Court in its recent decision in Martinez Vs. Ryan, (U.S. No. 10-1101, 3/20/12) where the High Court considered the Martinez's reasoning similar to Bolze's claims as it pertains to his attempts to raise accurate, coherent, and precise claim(s) in his initial filing of this Complaint.

In Martinez, the Supreme Court observed that, "[d]efendant's pursing their review are generally ill-equiped to represent them-selves," (quoting Halbert Vs. Michigan, 545 U.S. 605-617 (2005)). The Court went on to note that, "[w]ithout the help of an attorney, a prisoner will have [] difficulties vindicating a substantial claim [] in a collateral proceedings."

Furthermore, the Court stated that, "[P]risoners, [u]nlearned in the [l]aw, may not comply with the [] procedural rules or may misapprehend the substantive details of federal constitutional law," and "[w]hile confined in prison, the prisoner is in no position to fully develop the evidentiary basis for a claim []; which is often outside of the trial record." Id. The Court continued its obser-vattion noting that, "[a] prisoner inability to present a claim(s) of error is of particular concern when the claim is one of a due process concern which is the bedrock of the nation's justice system." Id.

-2-

As such, Plaintiffs would seek that this Court consider the Supreme Court's reasoning when evaluating this filing and its pleading seeking relief.

## II: JURISDICTION

The plaintiff, a prisoner currently confined at the Federal Correctional Institute located in Big Springs, TX filed this civil action against the CFTC located in Washington, DC and pursuant to the provisions of the "FOIA". (See; 5 U.S.C. §552), jurisdiction is thereby conferred. (See; 5 U.S.C. §552(a)(4)(B)).

In addition, pursuant to 28 U.S.C. §636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge; jurisdiction is also conferred for finding to fact, conclusion of law, and recommendations for the disposition of the case.

## III: STATEMENT OF FACTS

1).  For nearly two (2) years, Plaintiffs have sought documents from the "CFTC" either through its counsel (See; Exhibit B, p.1 and 2) or through the provisions of the "FOIA." (See; Exhibit B, p.3 and 4).

2).  Nearly six (6) weeks after the initial request for documents the "CFTC" responded on December 2, 2001. (See; Exhibit B, p.5 - 7). The "CFTC" logged the request as Reference No. 12-00026.

3).  On December 17, 2011, plaintiff narrowed the request. (See; Exhibit B, p.8).

4).  On June 2, 2012, plaintiff again narrowed his request to the "CFTC". (See; Exhibit B, p.9 and 10).

5).  On July 11, 2012, nearly a month later, the "CFTC" would

-3-

acknowledge the request. (See; Exhibit B, p.11)

6). On September 27, 2012, four (4) months later, the "CFTC" responded by stating that [NO] records existed. (See; Exhibit B, p.12-13).

7). On October 9, 2012, plaintiff Bolze filed a timely appeal with the "CFTC" pertaining to Ref. No. 12-00026-FOIA. (See; Exhibit B, p.12-13). *** as of Septmeber 11, 2013 -- Eleven Months later -- [NO] response to the appeal has ever come forth.

8). On October 10, 2012, plaintiff Bolze filed a second and successive "FOIA" request with the "CFTC". (See; Exhibit C, p.1-2).

9). On October 24, 2012, the "CFTC" acknowledged the "FOIA" request -- [EXCEPT] it had [NOT] acknowledged the full request in connection to "ANY" law firms that represented CAM, ATS, and Bolze during the relevant period of the 2006-07 "CFTC" investigation. (See; Exhibit C, p.3)

10). On December 10, 2012, plaintiff sent a second letter seeking a response to his "FOIA" request - nearly two months after the initial filing of the second "FOIA" request. (See; Exhibit C, p.4).

11). On March 19, 2003, six (6) months later, the "CFTC" stated it had found four (4) documents but denied the release of the document. (See; Exhibit A, p.3).

12). On April 9, 2013, plaintiff Bolze filed a timely appeal of "FOIA" request Reference Number 13-0006-FOIA. (See; Exhibit, C, p.5).

13). On May 15, 2013, the "CFTC's" general counsel responded by

-4-

stating that the denial was reviewed and upheld giving [ONLY] a generalized summary response without providing an itemized detailed Vaughn Index of that denial. (See; Exhibit A, p.1-2).

## IV: CONTENTIONS OF THE PARTIES

The "CFTC" had investigated CAM, ATS, and Bolze in 2006-07. The investigation concluded by the "CFTC" stating that CAM, ATS, and Bolze had [NOT] violated any rules or regulations of the Commodity Exchange Act (the "CEA") and therefore [DIDNOT] need to register with the National Futures Association (the "NFA"). In addition, the conclusion by the "CFTC" comforted existing CAM Investors of CAM and induced them to invest millions of additional funds with CAM and also induced them to refer CAM to their family members, friends, and other associates. In 2009, the "CFTC" filed a civil complaint [CONTRARY] to their 2007 conclusion. In its complaint (3:09-cv-88, E.D. TN, 2009), the "CFTC" stated that CAM was operating as a Commodity Pool (a "CPO") without registering as such, and Bolze was an associated person (an "AP") of a "CPO" during the relevant period of their 2006-07 investigation. In addition, according to the "CFTC", the relevant time period was from April 2002 through December of 2008. However, the 2006-07 investigation's relevant period was from April 2002 until October of 2006.

THEREFORE, PLAINTIFF'S CONTENTION is that the "CFTC" [CANNOT] use the "FOIA" as a shield to hide behind and for a denial of the documents that plaintiff seeks for the public to [SCRUTINIZE] the government agency's actions that caused hundreds of CAM investors to lose millions of their investment portifolio.

-5-

THE "CFTC's" CONTENTION is that the "CFTC" can use the veil of adminstrative secrecy, delay tactics, and "[b]ad faith" in their handling of plaintiff's request(s) and is also permitted to issue just a generalized summary response in its denial without having to bear its burden of proving that the factual infomation sought falls within the statutory exemption that they simply asserted.

## V: BACKGROUND OF THE COMPLAINT

On March 3, 2009, the "CFTC" fileda civil Complaint against the plaintiffs under seal. (See; 3:09-cv-88, E.D. TN 2009). The government also filed a parallel criminal Complaint on March 3, 2009 and also under seal. (See; 3:09-cr-93, E.D., TN, 2009); also see: Exhibit A, p.1, n.1).

In the "CFTC's" filing, the "CFTC" filed a Memorandum of Law and supporting documents (See; 3:09-cv-88, Doc. 15 and 15-1). A preliminary injunction hearing was held on March 31, 2009 where the "CFTC" presented its case through the testimony of three (3) CAM Investors and a senior "CFTC" investigator (See; 3:09-cv-88, Doc. 29). However the defense table, at the hearing, was empty due to the fact that the District Court had [DENIED] the presence of an incarcerated Bolze. (See; 3:09-cv-88, Doc. 33, Inj H'rg Tr. p.17, lines 11-17).

As stated, the "CFTC" then presented it case and through its senior investigator painted its picture -- completely unabated and [WITHOUT] cross examination or rebuttal to the allegations. The "CFTC [NEVER] revealed to the Court, the public at large, the news media, existing CAM Investors, their family members, and associates or other parties in oberservence that in 2006-07 -- two (2) years earlier -- the fact that the "CFTC" had investigated CAM, ATS, and Bolze[2]

-6-

Neither its lead counsel or its investigator proffered a word about this 2006-07 investigation clearing CAM, ATS, and Bolze of [ANY] violations of the "CEA" or a need to register with the "NFA."

In addition, when the "CFTC" began its 2006-07 investigation, the plaintiff had retained the services of a law firm (Lorence & Schrier) to represent the plaintiffs. (See; Exhibit D). This exhibit clearly demonstrates a partial payment to Lorence and Schrier for their services. After the "CFTC" concluded its investigation, it notified CAM, ATS, and Bolze [THROUGH] Lorence and Schrier clearing CAM, ATS, and Bolze of ["ANY"] violations of the "CEA" and a need to register with the "NFA."

A number of CAM Investors were aware of the ongoing investigation in 2006-07 by the "CFTC." After the "CFTC" cleared CAM, ATS, and Bolze of ["ANY] violations - in effect - their (CFTC) notification[2] gave great comfort to existing CAM Investors who knew of the investigation, who-in-turn, added millions to their own investments with CAM and lead them to make recommendations to others to invest in CAM -- as many did!

This notification and its endorsement from the "CFTC" also would cause CAM, ATS, Bolze to continue to operate its enterprise, as it had from April of 2002, during the investigation, and up to December of 2008. In March of 2009, the "CFTC" reversed its position and would

---

[1] As titled in a prior civil action brought by the "CFTC" against Dennis R. Bolze and CAM (defendants) and ATS (relief defendant). (See; 3:09-cv-88, E.D., TN, 2009).
[2] These documents are part of the "FOIA" request(s).

file a civil Complaint, in which its assertion was that CAM, ATS, and Bolze had acted outside the statutory construction and the conclusions of law [SINCE] April of 2002 through and including 2008, contrary to their 2006-07 investigation.

Bolze has sought documents from the "CFTC", for the over two (2) years, in order for the public -- itself -- to scrutinize the government's activities and actions that caused hundreds of existing CAM investors, their family memebers, friends, associates to lose their investment capital. In addition, this scrutiny of the agency's action would have greatly assisted the general investing public -- at large -- into the true activities of the agency in charge of protecting other investor's investment portfilios. When Congress enacted the "FOIA", it was to open and allow government activities to be transparent and permit srutiny.

## VI: STANDARD OF REVIEW

As stated, the Freedom of Information Act (the "FOIA") is intended to promote a more open and transparent  government through the disclosure of government information. (See; Dept. of the Air Force Vs. Rose, 425 U.S. 352, 360-62, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1978). Although "FOIA" and civil discovery both involve the disclosure of information, "FOIA" and discovery disclosures serve two different purpsoes. (See; John Doe Agency Vs. John Doe Corp., 493 U.S. 146, 151, 110 S. Ct. 471, 107 L. Ed. 2d 462 (1989). While "FOIA" does permit the withholding of certain classes of information from disclosure, the burden is on the agency to show that a "FOIA" exemption applies. (See; Cooper Cameron Corp, Vs. Dept of Labor, 280 F. 3d 539, 543, (5th Cir. 1977)(citing U.S. Dept of Justice

-8-

Vs. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755
(1989)). Moreover, an exemption available under "FOIA" does not
necessarily preclude discovery. (See; United States Vs. Murdock,
548 F. 2d 599 F. 2d 599, 602 (5th Cir. 1977). "FOIA" does, however,
recognize an exemption from disclosure of information protected
from discovery, such as information protected by the attorney-
client, work product, and deliberative process privileges. (See;
U.S.C §552(b)(5) (2000); see also Judicial Watchdog Vs. Rossotti,
285 F. Supp. 2d 17, 23 (D.D.C. 2003)(citing NLRB Vs. Sears, Roebuk,
421 U.S. 132, 149-50, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975)). Also
see; Millennium Marketing Group, LLC, et al, Vs. United States, 238,
F.R.D. 460; 2006 U.S. Dist. LEXIS 82644; 67 Fed. R. Serv. 3d (Call-
aghlan) 20; 2007-1 Tax Case (CCH) P50, 306; 98 A.F.T.R. 2d (RIA)
7657; Civil Action No. H-06-00962 (S.D. TX, 2006).

In general, summary judgment is appropriate only if there is
no genuine issue of material fact and that the moving party is
entitled to judgment as a matter of law. (See; Fed. R. Civ. P. 56;
Celotex Corp. Vs. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91
L. Ed. 2d 265 (1986); Waterhouse Vs. District of Columbia, 298
F. 3d 989, 991, 353 U.S. App. D.C. 205 (D.C. Cir, 2002). In deter-
mining whether a genuine issue of fact exists, the Court [MUST] view
all facts in the light most favorable to the non-moving party.
(See; Matsushita Elec. Indus. Co. Vs. Zenith Radio Corp, 475 U.S.
574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Likewise, in
ruling on cross motions for summary judgment, the Court shall grant
summary judgment only if one of the moving parties is entitled to
judgment as a matter of law upon material facts that are not

-9-

genuinely disputed. (See; Citizens For Responsibility and Ethics in Wash. Vs. Dept of Justice, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citing Rhoads Vs. McFerran, 517 F. 2d 66, 67 (2nd Cir 1975); also see; Angulmate Vs. U.S. Dept. of Homeland Sec., 2013 U.S. Dist. LEXIS 9395 (D.D.C. January 24, 2013).

In the "FOIA" context, however, as stated, the traditional standard is modified because "[t]he threshold question in any "FOIA" suit is whether the requester can even see the documents the character of which determines whether they can be released." (See; Cooper Cameron Corp. Vs. U.S. Dept of Labor, OSHA, 280 F. 3d 539, 543 (5th Cir. 2002). Accordingly, the "FOIA" statute provides that when the government withholds information from disclosure, the agency has the burden of prove [de novo] that the information is exempt from disclosure. (See; 5 U.S.C. § 552(a)(4)(B)). Thus, "[b]ecause the burden to establish an exemption remains with the agency, the District Court should not grant summary judgment based on a 'conclusory and generalized' assertion, even if the "FOIA" requester has not controverted that assertion." (See; Cooper Cameron Corp, 280 F. 3d at 543 (quoting Niagara Mohawk Power Corp. Vs. U.S. Dept of Energy, 169 F. 3d 16, 18, 335 U.S. App. D.C. 100 (D.C. Cir. 1999)).

In applying this standard, one must be mindful of the purpose behind the "FOIA". The "FOIA" was enacted to "[p]ierce the veil of administrative secrecy and to open ageny action to the light of public scrutiny." (See; Dept of Air Force Vs. Rose, 425 U.S. 352 361, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976)(citations omitted); see also; Darnbrough Vs.U.S. Dept of State, 2013 U.S. Dist. LEXIS 22872, February 20, 2013 (D.D.C. 2013).

-10-

The exemptions to disclose are explicitly limited by statute and should be construed narrowedly. Id. Thus, in a "FOIA" case, a court "[g]enerally will grant an agency's motion for summary judgment [ONLY] if the agency identifies the documents at issue and explains why they fall under exemptions." (See; Cooper Cameron Corp. 280 F. Ed at 543); Darnbrough).

The Court has defined a standard for the privilege log or the Vaughn Index by resorting to an in camera review of the documents. (See; Vaughn Vs. Rosen, 484 F. 2d 820, 827-28, 157 U.S. App. D.C. 340 (D.C. Cir. 1973). While the "FOIA" "[l]eaves to the [district] court's discretion whether to order an examination of the contents of the agencys at issue, in camera", in determining whether the claimed exemptions apply, "[t]he legislative intent for exercise of this discretion is relatively clear." Id. at 1144. This is because "[i]n instances where it is determined that records do exist, the District Court [MUST] do something more to assure itself of the factual basis and bona files of the agency's claim of exemption than rely soley upon an affidavit." (See; Vaughn, also see; Stephenson Vs. IRS, 629 F. 2d 1140, 1145 (5th Cir. 1980).

Under the "FOIA," "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." (See; 5 U.S.C. §552(2)). "[I]t has long been a rule of this Circuit that non-exempt portions of a document [MUST] be disclosed unless they are inextricably interwined with exempt portions." (See; Mead Data Cent., Inc. Vs. U.S. Dept of Air Force, 566 F. 2d 242, 260, 184 U.S. App. D.C. 350 (D.C. 1977). So important is this requirement that "[b]efore approving

-11-

the application of a "FOIA" exemption, the district court [MUST]
make specific findings of segregability regarding the documents to
be withheld." (See; Sussman, Vs. U.S. Marshals Serv., 494 F. 3d
1106, 1116, 377 U.S. App. D.C. 460 (D.C. Cir. 2007)(emphasis and
citations omitted).

Finally in analyzing any affidavits and declarations submitted
by the government, the agency is entitled to a "presumption of
legitimacy" unless there is evidence of ["BAD FAITH"] in handling
the "FOIA" request." (See; U.S. Dept of State vs. Ray, 502 U.S.
164, 179, 112 S. Ct. 541, 116 L. Ed. 2d 526 (1991). The presump-
tion of legitimacy, however, does not relieve the withholding agency
of its burden of proving that the factual information sought falls
within the statutory exemption asserted. See; Stephenson, 629
F. 2d at 1145; also see; ACLU Vs. Dept. of the Defense, 628 F. 3d
612, 619, 393 U.S. App. D.C. 384 (D.C. Cir. 2011); Darnbrough,
(D.D.C. 2013).
With these standards in mind, we now turn to the merits of this
case.

## VII: ANALYSIS AND DISCUSSION

As stated, plaintiffs filed an initial "FOIA" request on
October 22, 2011 with the "CFTC". (See; Exhibit B, p.3-4). On
December 2, 2011, (41 days later) the "CFTC" made its initial
acknowlegement and correspondence in regards to this request,
docketing it as Reference Number 12-00026 FOIA. (See; Exhibit B,
p.5-7). The "CFTC's" FOIA Compliance Office stated they had
"[I]dentified a large volume of responsive records." However, the

-12-

records turned out to be court documents in the form of hearing
transcripts in the criminal case (3:09-cr-93, E.D. TN 2009) against
Mr. Bolze. (See; Exhibit B, p.8). The "CFTC" began its [BAD FAITH]
approach at the start of these request(s) because the record demon-
strates that the initial request was [NOT] for court documents or
public records but rather only correspondences between the "CFTC"
and various other government agencies. (See; Exhibit B, 3, 4, & 5).
The "CFTC" would continue its [BAD FAITH] by stating it would [NOT]
rellease additional documents until full payment was made for the
hearing transcripts, which Bolze had [NOT] sought in the first place.

Bolze complained to the "CFTC" about their handling of the
request. (See; Exhibit B, p.8). In the response to this complaint,
the "CFTC" issued a new invoice for even a higher amount. (See;
Exhibit B, p.11-11a). Bolze, a indigent federal prisoner had no
choice but to abandon his quest to obtain correspondences that would
allow the Court, CAM Investors, their family members, friends, and
associates, along with the News Media and other parties of interest
to scrutinzie the "CFTC's" activities in 2006-07. The "CFTC" also
stated that it had included "[a]n itemization of the search, review,
and reproduction cost." However, a review of the invoice (Exhibit
B, p.11a) reveals that the invoice [DOES NOT] contain an "itemiza-
tion" of the search -- i.e. an Vaughn Index-type documentation, and
again demonstrates the ongoing [BAD FAITH] approach to this "FOIA"
request. Bolze also complained to the "CFTC" to this fact. (See;
Exhibit B, p.8 at ¶3) -- BUT TO NO AVAIL -- the "CFTC" never
responded.

On June 1, 2012, Bolze filed a narrowed search request with

-13-

the "CFTC". (See; Exhibit B, p.9-10).

In this request, Bolze sought correspondences to and from:

1). The CFTC and CAM, ATS, and Bolze between January 2005 through and including December of 2006; and

2). the CFTC and Lorence & Schrier PLLC, Attorney at Law, from January 2005 through and including December of 2006. (See; Exhibit B, p.8)(emphsis added)

In addition, Bolze stated that [he] would pay all reasonable costs, file a forma puapers, or make other arrangements and sought a "[f]ee agreement," at the time. (See; Exhibit B, p.10 at ¶2). Further, the law firm of Lorence & Schrier had been retained by CAM, ATS, and Bolze on October 2, 2006 to represent them during the "CFTC's" 2006-07 investigation of CAM, ATS, and Bolze. (See; Exhibit D). This exhibit demonstrates a partial payment to the law firm.

On July 11, 2012 (41 days later) the "CFTC" acknowledged the narrowed second request marking it as 12-00122 FOIA. 5 U.S.C. § 552(6)(B)(i) of the FOIA requires, by statute, that an agency [MUST] comply to requests within 10 business days. This demonstrates that the "CFTC" [BAD FAITH] approach only continued.

THE "CFTC" then responded on September 27, 2012 (119 days later) that the search [DID NOT] reveal [ANY] documents -- including the law firm of Lorence & Schrier. (See; Exhibit B, p.12). 5 U.S. C. §552(6)(B)(i) also requires the agency to notify of any delay and when the conclusion of the search would be completed. The "CFTC" failed to notify the requester of [ANY] delays and further demonstrated their [BAD FAITH] handling of these requests.

On October 9, 2012, Bolze filed a timely appeal to request

-14-

no. 12-00122 FOIA. (See; Exhibit B, p.14). The "CFTC" never responded directly to this appeal as of the filing of this civil complaint.

On October 12, 2012, Bolze filed a second [new] formal inquiry with the "CFTC." (See; Exhibit C, p.1 & 2). In this request, Bolze sought two (2) types of correspondences:

1). "to and from the CFTC as it related to Michael Potter (CAM and ATS resident agent) and CAM and/or ATS from 2002 until December 31, 2008; and

2). to and from the "CFTC" and [ANY] law firm in reference to the CFTC's investigation of CAM, and/or ATS from 2002 up to December 31, 2008." (See; Exhibit C, p.1 & 2)(emphasis and underlining added).

This request changed the inquiry from a stated law firm to ["ANY"] law firm in case the spelling was incorrect or was not referenced properly in order for the "CFTC" to have an excuse NOT to comply. It also expanded the time frame, in case the documents fell outside the 12-00026 FOIA or the 12-00122 FOIA original request(s).

The "CFTC" did respond in twelve (12) days and assigned 13-00006 FOIA as the reference number. (See; Exhibit C, p.3). However, a close examination of the "CFTC's" acknowledgement reveals the fact that the "CFTC" omitted [ANY] reference to the requested documents of:

"to and from....the agency and [ANY] law firm inreference to the CFTC's investigation of CAM, and/or ATS from the period of 2002 until and including December 31, 2008." (See; Exhibit C, p.1)(emphasis and underline added)

In addition, this request clearly defined what the term - document meant and clearly defined what the term -- party of interest was.

-15-

(See; Exhibit C, p.1 at ¶2)

The "CFTC" clearly continued to act in [BAD FAITH] in its handling this narrowed request to provide any documents relating to Bolze's legal counsel and its conclusion (the "CFTC") that CAM, ATS, and Bolze had [NOT] violated any "CEA's" rules or regulations and did [NOT] need to register with the "NFA."

The record reveals further that Bolze wrote a letter on December 10, 2012, complaing about the "CFTC's" handling of his request(s). The letter spoke volumes about the [BAD FAITH] being projected by teh "CFTC" and sought to determine why the "CFTC" had [NOT] provided [ANY] response to the 13-0006 FOIA request. (See; Exhibit C, p.4).

Finally, on March 19 ,2013, nearly five (5) months [WITHOUT] a response, the "CFTC" simply stated that it had found four (4) documents. However, a close examination of the letter clearly reveals the fact(s) that:

1). that this letter was in reference to number 13-0006 FOIA and [NOT] the first request(s) e.g. 12-00026 or 12-00122 FOIA; and

2). the letter omitted [ANY] reference to the actual request concerning document(s) to and from the CFTC and [ANY] law firm from 2002 through 2008. (See; Exhibit A, p.3) (emphasis and underlining added)

Plaitiff Bolze filed a appeal of 13-0006 FOIA on April 9, 2013. (See; Exhibit C,, p.5). ON May 15, 2013, the "CFTC's" general counsel upheld the agency's denial to provide [ANY] documents -- whether in whole or in part - redacted or otherwise. (See Exhibit A, p.1 and 2).

-16-

In the "CFTC's" appeal response, the "CFTC" cited FOIA - Exemption 6. (See; Exhibit A, p.1 at ¶2). Also the "CFTC's" appeal denial cited the only fact that plaintiff wanted any of the identifying information redacted rather than withholding the entire document. Again, the "CFTC" only displayed at true lack of understanding or a true showing of its [BAD FAITH] approach by mis-stating the facts.

The "CFTC", correctly stated "[t]he withholding of whole documents simply because they may contain some exempt information is ordinarily improper." (See; Exhibit A, p. 1 at ¶3). The "CFTC" then stated, "[i]n situations involving small groups however... withholding is appropriate." The key question here is -- as a matter of law -- what defines a [SMALL GROUP] -- is it five (5), a dozen (12), or fifty (50)??????

Certainly, CAM, did [NOT] involve a [SMALL GROUP]! Hundreds if not thousands, of people were affected by CAM's 2009 failure. A failure that had the "CFTC's" blessing in early 2007, thereby, the "CFTC's" reasoning is deeply flawed - at best.

The "CFTC" stated in their generalized summary the following:

"[W]e further observe that the public interest in diclosure under FOIA depends on the degree to which disclosure would shed light on the agency's performance of its statutory duties and its compliance with the law." (See; Exhibit A, p.2 at ¶4)(emphasis and underline added).

The "CFTC" also stated that - in part;

"...[t]he basic purpose of the FOIA is to open the government to public scrutiny [MUST] be examined to determine whether disclosure is appropriate."

-17-

Finally, the CFTC stated the following:

> "[s]uch scrutiny is not served by disclosure that would reveal little or nothing about an agency's official activities." (See; Exhibit A, p.2 at ¶4).

However, disclosure is certainly appropriate because hundreds of CAM investors were harmed because of this agency's activities or the lack thereof, not including their family members, friends, and associates. Disclosure would certainly shed light of the "CFTC's" 2006-07 investigation. Disclosure would allow the Court, CAM investors, their family members, friends, associates, the news media, and other parties of interest (the Trustees) to scrutiny this agency's official activities and hold the agency accountable.

The "CFTC's" appeal response was also - in part - contrary to the original denial. The original denial only cited FOIA Exemption 6 of 5 U.S.C. §552(b)(6). (See; Exhibit A, p.3). The appeal's response included FOIA Exemption 7(c) and went beyond the scope of the original denial. Nevertheless, the "CFTC" is withholding documents that would clearly demonstrate the failure of the "CFTC" in 2006-07, something the "CFTC" cleary wnat to [AVOID], at any cost, by using the shield of secrecy and by [AVOIDING] [ANY] reference to or from its correspondence with [ANY] law firm(s) including those of Lorence & Schrier during its 2006-07 investigation.

B:   FOIA EXEMPTION 6 AND 7(c) AND THE INVASION OF PERSONAL PRIVACY.

The "CFTC", in trying to avoid disclosure of documents concerning its 2006-07 investigation of CAM, ATS, and Bolze and its (the "CFTC's") clearing of CAM, ATS, and Bolze's enterprise of [ANY] violations of the "CEA's rules and regulations because those

-18-

documents are [CONTRARY] to its civil complaint less than two (2) years later.  In affect, the "CFTC" had given the CAM investors its endorsement of CAM's investment strategies back in 2007.

Now, however, the "CFTC" wants those documents to be exempt from any form of public disclosure by citing both FOIA Exemption 6 and 7(c).  The "CFTC" offers no insight or proof as to why these documents might be exempt -- only that they are!!

EXEMPTION 6: provides that an agency need not disclose "[p]ersonal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." (See; 5 U.S.C. §552(b)(6)).

EXEMPTION 7(c): provides that an agency need not disclose "[r]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information...(c) could reasonanably be expected to constitute an unwarranted invasion of personal privacy."  (See; 5 U.S.C. §552-(b)(7)(c)).  (See; Batton Vs. Evers, No. 08-20727 (5th Cir. 2010); Angulmate Vs. U.S. Dept of Homeland Security. 2013 U.S. Dist. LEXIS 9395 (D.D.C. January 24, 2013)).

The Supreme Court has clarified that "[w]hether disclosure of private document under Exemption 7(c) is warranted must turn on the nature of the requested documents and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny. rather than on the particular purpose for which the document is being requested."  (See; U.S. Dept of Justice Vs. Reporters Comm. for Freedom of Press, 489 U.S. 749, 772, 109 S. ct. 1468, 103 L. Ed. 2d 774 (1989)(internal citation and quotation marks omitted).  Instead. the "c]ourt must balance

the public interest in disclosure against the interest Congress intended the Exemption to protect." Id. at 776. A number of courts have performed the same analysis in cases arising under Exemption 6 as well. (See; Avondale Indus, Inc. Vs. NLRB, 90 F. 3d 955, 960 (5th Cir. 1996).

To determine whether Exemption 6 or 7(c) applies, the court [MUST] first determine whether the records were compiled for law enforcement purposes. (See; Cooper Cameron Corp. Vs. U.S. Dept of LAbor, 280 F. 3d 539, 545 (5th Cir. 2004). In the instant case, the plaintiff sought correspondences to and from the "CFTC" and CAM, ATS, and Bolze and/or their resident agent and his legal counsel and did [NOT] represent law enforcement type documents.

The Court went on tot hold that, "[I]f they were, the court must balance the privacy interest of the individual against the public interest in disclosure." (See; Darnbrough, supra; Angul- mate, supra; and Thomas Vs. U.S. Dept of Justice, 2006 US. Dist. LEXIS 15549, civil action no. 1:04-cv-112 (FEb. 15, 2006)(citing National Archives & Records Admin, Vs. Favish, 541 U.S. 157, 171, 124 S. Ct. 1570, 158, L. Ed. 2d 319 (2004); and Cooper Cameron Corp, supra, 280 3d at 545.).

The "CFTC", in its denials, does not argue that the documents involved law enforcement activities. (See; Exhibit A, p.1-3) In addition, since the "CFTC" stated a privacy interest had been identified, the information [MUST] show that the public interest is significant and that the information is likely to advance that interest. (See; Favish, supra, 541 U.S. at 172). In this instant case,the court, CAM investors, their family members, friends, and

-20-

associates, the new media, and other parties in observance have a [SIGNIFICANT INTEREST] is the 2006-07 "CFTC's" investigation of CAM, ATS, and Bolze and the "CFTC's" endorsement of their enterprises since it was this endorsement that ultimately caused hundreds to lose millions of their investment capital in 2009.

In this case, the ambiguity cited in the "CFTC's" denial in the type of documents withheld and the information to determine whether the individuals named in the documents have a viable privacy interest. (See; Avondale, supra, 90 F. 3d at 960).

In most litigation, summary judment is appropriate if no genuine issue as to any matierial fact. (See; Fed. R. Civ. P. 56(e); Cooper Cameron Corp., supra.). The standard is different for FOIA cases because the person requesting the documents is not allowed to even see the documents unless the court rules in his favor. Id. "[C]ourts will generally grant an agency's motion only [IF] the agency identifies the documents at issue and explains --- in detail --- why they fall under exemption." Id. Although a ruling may be made based on affidavits, summary judgments [WILL NOT] be granted based soley on conclusory and vague assertion, evwn if the person requesting the documents does not controvert that assertion. Id.

In analyzing any official correspondences, affidavits, and declarations submitted by the government, the agency is entitled to a "presumption of legitimacy" unless there is evidence of --- [BAD FAITH] in handling the FOIA request. (See; U.S. Dept of State Vs. Ray, 502 U.S. 164, 179, 112 S. Ct. 541, 116 L. Ed. 2d 526 (1991). Plaintiff Bolze has demonstrated through the agency's own correspondences of its [BAD FAITH] approach in handling the

-21-

request(s) and the releasing of documents in an effort to soley protect itself from the scrutiny of the public. The presumption of legitimacy, however, does not relieve the withholding agency of its burden of proof that the factual information sought falls within the statutory exemption asserted. (See; Batton Vs. Evers, supra; Stephenson, 629 F. 2d at 1145.).

As stated, the "CFTC" has provided [NO] proof that the documents sought actually falls within the statutory exemption of FOIA Exemption 6 or 7(c).

C:    5 U.S.C.S. §552(a)(4)(B) GRANTS THE COURT JURISDICTION
      TO COMPEL THE AN AGENCY TO DISCLOSE DOCUMENTS

Under the "FOIA," a Court has jurisdiction to enjoin an agency from withholding agency's records and to order the production of [ANY] agency's records improperly withheld from the complainant. (See; 5 U.S.C.S. §522(a)(4)(B); also see; Batton Vs. Evers, supra, Darnbrough, supra; and Angulmate, supra).

The District Court and the Court of Appeals for the District of Columbia has defined a standard for the production of a detailed "privilege log" and/or a "Vaughn-Index" as well as general discovery orders. (See; Vaughn Vs. Rosen, 484 F. 2d 820, 827-28, 157 U.S. App. D. C. 340 (D.C. Cir. 1973); Stephenson Vs. IRS, 629, F. 2d 1140, 1145 (5th Cir. 1980). "[R]esort to in camera review is discretionary, as is resort to a Vaughn Index." The Court went on to declare that "[w]hile the FOIA,leaves to the [District] Court discretion whether to order an examination of the contents of the agency records at issue, in camera, in determining whether the claimed exemptions apply, the legislative intent for exercise of

-22-

discretion is relatively clear." Id at 1144. This is because "[i]n instances where it is determined that records do exist, the District Court [MUST] do some thing more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely soley upon an affidavit." Id. at 1145.

A Vaughn Index is a routine device through which a defendant agency under the FOIA describes the responsive documents withheld or redacted and indicates why the exemptions claimed apply to the withheld material. (See; Batton, supra,).

## VIII: CONCLUSION

Based on the fact(s) demonstrated above, including the [BAD FAITH] offered by the "CFTC" in handling plaintiff Bolze's FOIA request(s) for documents that are being withhelda from its 2006-07 investigation of CAM, ATS, and Bolze which would allow the Court, CAM investors, their family members, and associates, along with the news media, and other parties in observance (Trustees and financial institutions) to scrutinize the agency's own activities and its endorsement of CAM, ATS, and Bolze's enterprise.

This 2006-07 investigation and its final conclusion lead many investors relying on the CFTC's own endorsement to invest millions of dollars until the collapse of CAM in late 2008. The main purpose of the FOIA, according to the conclusions of law is to allow the public to scrutinize the government's activitites.

THEREFORE, plaintiff Bolze requests this Honorable Court to GRANT an order requiring the "CFTC" to release [ANY] and [ALL] documents concerning its 2006-07 investigation of CAM, ATS, and

-23-

Bolze through its resident agent and/or its legal counsel (Lorence and Schrier) and give a full and complete accounting within thirty-days.

Respectfully submitted on this the seventeenth day of January 2014 by and for

DENNIS R. BOLZE,

Signature:

Dennis R. Bolze
Pro'se
Reg. No. 14825-067
F.C.I. Big Spring
1900 Simler Avenue
Big Spring, TX 79720

## DECLARATION

I, DENNIS R. BOLZE, under the penalty of perjury do hereby declare that the above stated facts and evidence is true and correct to the best of my ability, belief, and knowledge.

Signature:

Dennis R. Bolze

-24-